# EXHIBIT A

# Complaint

# EXHIBIT A

Electronically Filed
4/15/2021 1:06 PM
Steven D. Grierson
CLERK OF THE COURT

Ira S. Levine, ESQ.
Nevada Bar No. 2130
LEVINE & GARFINKEL
1671 W. Horizon Ridge Pkwy, Suite 230
Henderson, NV 89012
Tel: (702) 673-1608
Fax: (702) 735-0198
Email: ilevinel@lgealaw.com

Anthony B. Golden, ESQ.
Nevada Bar No. 9563
GARG GOLDEN LAW FIRM
3145 St. Rose Parkway, Suite 230
Henderson, NV 89052
Tel: (702) 850-0202
Fax: (702) 850-0204
Email: agolden@garggolden.com

*Attorneys for Plaintiff Elizabeth Hunterton*

CASE NO: A-21-832978-C
Department 16

# DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| ELIZABETH HUNTERTON, an individual<br><br>Plaintiff,<br><br>vs.<br><br>LEUKEMIA & LYMPHOMA SOCIETY, Inc., a New York not for profit corporation,<br><br>Defendant. | Case No.:<br>Dept. No.:<br><br>**COMPLAINT**<br><br>**ARBITRATION EXEMPTION REQUESTED; AMOUNT IN CONTROVERSY EXCEEDS $50,000** |

Plaintiff Elizabeth Hunterton complains against Defendant Leukemia & Lymphoma Society, Inc. as follows:

### GENERAL ALLEGATIONS

1. Plaintiff Elizabeth Hunterton ("Hunterton") is a resident of Clark County, Nevada.

2. Defendant Leukemia & Lymphoma Society, Inc. ("LLS") is a New York 501(c)(3) not for profit corporation that was qualified to do business in the State of Nevada; however, LLS

failed to file its annual list of officers in 2019 and its status is currently revoked.

3. Defendant is a not-for-profit corporation whose mission is to cure leukemia, lymphoma, Hodgkin's disease and myeloma, and improve the quality of life of patients and their families.

4. Defendant, despite its revoked status, operates in Clark County, Nevada with offices at 5740 S. Eastern Avenue, Suite 245, Las Vegas, Nevada 89119.

5. This Court has subject matter jurisdiction over this action under the Nevada Constitution, Article 6, §6.

6. The acts described in this Complaint occurred in Clark County, Nevada, and therefore this Court is the appropriate venue.

7. On or about March 30, 2015 Plaintiff, an African American female, received an offer from Defendant, a copy of which offer letter is attached as Exhibit "A" to this Complaint, for the position of Executive Director, Southern Nevada Chapter reporting to Kathy Griesenbeck, Vice President of the Southwest Region for Defendant.

8. Plaintiff's employment commenced on April 27, 2015 with an annual base salary of $115,000.

9. Pursuant to the Offer Letter, Plaintiff was to be reviewed by Defendant during the annual performance review cycle in accordance with the LLS personnel policies and procedures.

10. Plaintiff did receive reviews.

11. In Plaintiff's Fiscal Year 2019 Mid-Year Performance Review, the last review prior to being terminated, Phillip Weichel, an executive with LLS stated, "[Defendant] is poised for another successful year under [Plaintiff's] leadership." "Solid work in core campaigns despite staffing challenges." "Terrific work with Wynn to realize large revenue opportunity as well as leadership engagement." "[Plaintiff] has embraced [Platinum Board] and with a new chair has

-2-

developed a strong partnership to focus on these goals and chapter success."

12. On or about the beginning of March, 2019 Plaintiff needed to have certain medical procedures and requested leave under the Family Medical Leave Act ("FMLA").

13. The leave was to be five (5) weeks with the leave to end or about April 1, 2019, which was approved by LLS.

14. On April 1, 2019 Nicole Rizzuti confirmed on a phone conference with Plaintiff for an HR debrief to bring Plaintiff up to speed during her FMLA leave.

15. The meeting was actually in person with Frank Canning, the acting Executive Director during Plaintiff's FMLA leave, Mr. Weichel, Regional Vice President and Ms., HR Business Partner.

16. At the meeting the three individuals questioned Plaintiff about certain financial transactions regarding bookkeeping software, reports and transaction, of which Plaintiff had no access to; asked about the new office selection, which was spearheaded and approved by the national headquarters of Defendant, signing a contract valued at $10,000 and no one in attendance could confirm the valuation cut-off for contract execution, the accounting for the LLS Southern Nevada golf tournament, a fundraiser for a patient and the content of certain forms, which was filled out by the bookkeeper.

17. At the conclusion, Plaintiff was placed on administrative leave.

18. Defendant was aware, when placing Plaintiff on administrative leave, that she would need a second medical procedure, which would have necessitated further leave pursuant to the FMLA later in 2019.

19. Plaintiff was terminated by Defendant on April 16, 2019 with the stated reason "Recommended termination due to lack of confidence in [Plaintiff's] leadership. Year over year patterns of not following best practices and policies of LLS. Allowing her team to give cash to

volunteers to have those monies matched along with a recent scenario where [Plaintiff] has signed a contract with a school in the amount of $10,000 with the stipulation from the school that LLS give $5,000 of those monies to a family of the school district." A copy of the LLS Field Termination Checklist is attached as Exhibit "B" to this Complaint.

20. Prior to the April 1, 2019 meeting, Plaintiff has had many conversations with the Directors of Campaign Excellence, the Operations Director who oversees finances/bookkeeping, and the Regional Vice President who is her direct supervisor and at no time was Plaintiff ever advised that there was an issue with her following best practices. Rather, Plaintiff was commended for doing so.

21. At the April 1, 2019 meeting Plaintiff was never asked about giving cash to volunteers. Plaintiff never witnessed any member of her team giving monies to any volunteer to be matched in a fashion that fell beyond the best practices encouraged by national staff. Sara Mayer in Phoenix, Arizona processed all matching gifts as part of a pilot program and was fully aware that two of the Southern Nevada staff had utilized matching gifts. In addition, Plaintiff is aware of a longstanding history of volunteers utilizing matching gifts programs dating back to 2009, which utilization was sanctioned by the national office and which predated Plaintiff's employment.

22. At the April 1, 2019 meeting, Plaintiff was asked about the school contract, which was also a fundraiser for a pediatric cancer patient. While the $10,000 value was discussed, no one in attendance could confirm the amount necessary for director approval. Plaintiff was under the impression the amount was $25,000. Regardless, the funds raised were to be split evenly between the school and the pediatric patient. This activity was specifically approved in the past. LLS' Regional Patient Services Manager and Director of Campaign Excellence for Student Series allowed LLS of Southern Nevada to do this for a pediatric patient named Jeremy Fjelstad.

Plaintiff, based upon past approvals, had every reason to believe that entering into a similar contract was permitted and justifiable.

23. Defendant had a policy and history of progressive discipline prior to the termination of an employee. Defendant failed to follow this policy with Plaintiff.

24. While employed at Defendant, Plaintiff was subject to unique expectations as the only African American/racial minority Executive Director in Defendant's entire organization.

25. Defendant was retaliating due to Plaintiff's honesty in organizational misconduct and because Plaintiff needed another medical procedure.

26. In addition to Plaintiff, Defendant terminated a 60+ year old Jewish woman, openly gay staff members were also terminated and several other executives, ages 50 and older, were terminated.

27. Plaintiff always accomplished all of her job duties and had previously received excellent reviews.

28. The reasons for Plaintiff's termination are clearly fabricated as Plaintiff always had excellent reviews.

29. Upon information and belief, Defendant discriminated against Plaintiff on the basis of race and retaliated against her for taking her FMLA leave and the fact that she was going to take additional FMLA leave.

### FIRST CAUSE OF ACTION

### (Violation of the Civil Rights Act of 1871, § 1981)

30. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 29 as fully set forth herein.

31. Plaintiff is African American and therefore a member of a protected class.

32. Defendant engaged in the above-mentioned harassment and discrimination of

Plaintiff with the purposeful intent to discriminate against her because of her race (African American).

33. Under similar circumstances, other, White or non-African American employees were not subjected to the same type of behavior or treatment that Plaintiff was subjected to as a minority employee.

34. Plaintiff was subject to disparate treatment and retaliation through adverse employment actions, and favorable behavior toward white employees, which is prima facie evidence of purposeful intent to discriminate against Plaintiff because of her race.

35. As a result of Defendant's discrimination, Plaintiff has suffered and will continue to suffer damages in excess of $15,000.00.

36. As a result of Defendant's conduct, Plaintiff has been forced to retain the services of an attorney to address the conduct complained of and therefore is entitled to all of its attorney's fees and costs for the bringing of this action.

37. Defendant is guilty of oppression, fraud or malice, express or implied as Defendant knowingly violated Plaintiff's rights under § 1981 of the Civil Rights Act of 1871.

38. Therefore, Plaintiff is entitled to recover punitive damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury

### SECOND CAUSE OF ACTION

**(Retaliation and Interference in Violation of the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, et. seq.)**

39. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 38 as fully set forth herein.

40. Defendant is a covered employer as defined in 29 U.S.C. §2611 under the FMLA.

41. Plaintiff availed herself of a protected right under the FMLA by taking FMLA leave for certain medical conditions in March 2019.

42. Plaintiff, upon returning from her approved FMLA leave, was terminated.

43. Defendant's violations of the FMLA were willful and without justification.

44. Defendant's conduct and violation of the FMLA were done with malice, oppressions, and with a conscious disregard for Plaintiff's rights under the FMLA.

45. As a result of Defendant's actions, Plaintiff has suffered and will continue to suffer damages in excess of $15,000.00.

46. As result of Defendant's conduct, Plaintiff has required to retain legal counsel to prosecute this matter and should be reimbursed for its attorney's fees and costs associated for bringing this action.

47. Plaintiff is entitled to damages equal to her lost wages, salary, employment benefits and other compensation denied or lost, liquidated damages as provided under the FMLA, costs, attorneys' fees, interest, and equitable relief as deemed appropriate.

### THIRD CAUSE OF ACTION

**(Intentional/Negligent Infliction of Emotional Distress)**

48. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 47 as fully set forth herein.

49. Defendant's conduct toward Plaintiff was extreme and outrageous and caused significant emotional harm, headaches, sleeplessness and various physical and mental distress.

50. Defendant's conduct was extreme, outrageous, and undertaken with either intent or, reckless disregard for causing Plaintiff emotional distress.

51. Defendant had a duty to refrain from engaging in the hostile and retaliatory acts as described above.

52. Defendant breached that duty.

53. Defendant's intentional or negligent conduct was the legal, actual, proximate cause of Plaintiff's extreme and/or severe emotional distress by engaging in the conduct described herein.

54. As a result of Defendant's actions, Plaintiff has suffered and will continue to suffer damages in excess of $15,000.00.

55. As result of Defendant's conduct, Plaintiff has been required to retain legal counsel to prosecute this matter and should be reimbursed for its attorney's fees and costs associated for bringing this action.

56. Defendants must pay damages in an amount to be determined at trial but exceeding $15,000 for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life because they engaged in illegal actions.

57. Because Defendants are guilty of oppression, fraud or malice, express or implied, Defendants must pay Plaintiff an additional amount for the sake of example and by way of punishment.

## FOURTH CAUSE OF ACTION

### (Wrongful Termination)

58. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 57 as fully set forth herein.

59. Plaintiff only had excellent reviews prior to being terminated.

60. Defendant failed to practice progressive discipline in the termination of Plaintiff as required by Defendant's policies and procedures.

61. Defendant was terminated for reasons other than as stated in the termination letter and such termination was wrongful.

62. As a direct and approximate result of Defendant actions, Plaintiff has suffered and will continue to suffer damages in an amount in excess of $15,000.00.

63. As result of Defendant's conduct, Plaintiff has been required to retain legal counsel to prosecute this matter and should be reimbursed for its attorney's fees and costs associated for bringing this action.

WHEREFORE, Plaintiff respectfully requests the following relief:

1. As to its First Cause of Action for Violation of the Civil Rights Act of 1871, § 1981, an award of damages in excess of $15,000.00 plus punitive damages;

2. As to its Second Cause of Action for Retaliation in Violation of the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, et. seq., an award of damages in excess of $15,000 plus punitive damages;

3. As to its Third Cause of Action for Intentional/Negligent Infliction of Emotional an award of damages in excess of $15,000 plus punitive damages;

4. As to its Fourth Cause of Action for Wrongful Termination, an award of damages in excess of $15,000.00;

5. Pursuant to the terms of the Agreement, an award of attorney's fees and costs; and

6. Such other relief as the Court deems just and proper.

Dated this 15th day of April, 2021.

LEVINE & GARFINKEL

By: _____
Ira S. Levine, Esq.
Nevada Bar No. 2130
1671 W. Horizon Ridge Pkwy, Suite 230
Henderson, NV 89012
Tel: (702) 673-1608
Fax: (702) 735-0198
Email: ilevine@lgealaw.com
*Attorneys for Plaintiff Elizabeth Hunterton*

EXHIBIT "A"

OFFER LETTER



**LEUKEMIA &
LYMPHOMA
SOCIETY***
fighting blood cancers

www.lls.org

March 30, 2015

Elizabeth Hunterton
7380 S. Eastern Avenue, Suite 124
Las Vegas, NV 89123

*Revised*

Dear Elizabeth:

I am pleased to confirm our offer for the position of Executive Director, Southern Nevada Chapter with The Leukemia & Lymphoma Society (LLS). Reporting to Kathy Griesenbeck, Vice President, Southwest Region, you will begin on April 27th or another mutually agreed upon date. Your annual base salary will be $115,000, paid semi-monthly.

You will receive a performance review at the end of six months. In addition, you will also be reviewed during the annual performance review cycle in accordance with our personnel policies and procedures. Thereafter, you will be reviewed annually.

Benefits for full time employees begin on the first day of the month following employment and currently include life insurance, health and dental insurance (with some co-payment) and long term disability insurance.

Enclosed are new hire forms for your completion.

This letter is intended to confirm the offer of employment that has been extended to you, and to let you know that this offer is contingent on a background screen. In no way is this letter intended to be an employment contract or a guarantee of employment for a specified period of time. Your employment is "at will", as with all employees' with LLS, which means that either you or LLS may terminate the employment relationship at any time for any reason or for no reason.

You agree that you will refrain from outside employment when these work activities:

- prevent you from fully performing work for which you are employed at LLS, including overtime assignments;
- involve organization that are doing or seek to do business with LLS;
- violate provision of the law of LLS polices or rules, or
- adversely affect the image of LLS

You shall not directly or indirectly solicit, influence or encourage, or attempt to solicit, influence or encourage, any employee or consultant of LLS to cease his or her relationship with LLS. Indirect solicitation, influence, or encouragement includes, but is not limited to providing information to any other individual or entity that enables such individual or entity to engage in any of the conduct prohibited by the terms of this letter.

National Office
1311 MAMARONECK AVE, Suite 310, WHITE PLAINS, NY 10605   I   *tel.* 914.949.5213      *fax.* 914.949.6691

You agree that, as a result of your employment with LLS, you will possess secret, confidential or proprietary information concerning the operations, plans and methods of LLS. You agree that, during and after employment you will not disclose to third parties donor lists, software, marketing or business development plans, organizational plans, or any other information, documents, reports, or data produced by or concerning LLS that are not known generally outside of LLS ("Confidential Information"). The duty of confidentiality includes, without limitation, any oral information and/or documents in any written or electronic form received in your capacity as Employee. You agree that LLS would suffer irreparable harm if you disclosed any "Confidential Information."

These provisions are governed by New York law without regard to conflict of laws principals, and they are not intended to diminish in any way Employee's common law and fiduciary obligations to LLS.

Once you have had the opportunity to review both this offer letter and accompanying documents, please sign and return to me by 5:00 pm on March 31st indicating and confirming that you have read these documents, otherwise this offer will expire. Please feel free to call me at 914-821-8239, if you have any questions about LLS, or the terms of this offer.

We are looking forward to working with you and are confident that you will add great value to our organization. On behalf of LLS, I wish to extend our warmest welcome.

Sincerely,

Paulette Damiano
Vice President, Human Resources

Accepted on: _____

_____
Signature

EXHIBIT "B"

LLS FIELD TERMINATION CHECKLIST

## LLS FIELD TERMINATION CHECKLIST

EE Name: Elizabeth Hunterton          Term Date: April 16, 2019

Location/Dept: Executive Director, Southern Nevada Chapter

Term Reason:

☐ Voluntary;

☑ Involuntary; Recommended termination due to lack of confidence in her leadership. Year over year patterns of not following best practices and policies of LLS. ~~Allowing her team to give cash to volunteers to have those monies~~ matched along with a recent scenario where Elizabeth has signed a contract with a school in the amount of $10,000 with the stipulation from the school that LLS give $5,000 of those monies to a family of the school district.

☑ HRBP Notified

☐ Resignation letter received and forwarded to National Office for EE file (Voluntary Only)

☑ Finance Notified – Kathy Piacentino, cc: Michael DiPierro (All)

☑ Review involuntary term process; HRBP and ED (Involuntary Only)

☑ Time off accruals verified in eTime by Chapter for final paycheck

   Vacation & Vacation Carryover Hours Due: 1:45 hours of vacation

   Floating Holiday and Personal Hours Due (CA Only): _____

☑ Termination work event submitted in ADP (Voluntary submitted by Chapter, Involuntary submitted by HRBP)

☑ Off boarding Info emailed to Employee (All)   Benefits for Separating Employees 2019 PDF was given to Elizabeth Hunterton on 4/18 after receiving approval from Legal

☑ Request personal email address to participate in exit interview (Voluntary Only)

   Email: elizabeth.hunterton@gmail.com

☐ CA only: Signed Offboarding CA documents

☑ Final pay distributed to Employee

☑ Equipment collected by Chapter (Assigned to: Doug MacNab        )

Checklist Completed By: _Catherine Cidukas_   Date: April 16, 2019